We'll go on to the next case on the calendar, which is 17-55642 Lambus v. Siasat. Just one second. Sure. Off that? Not at all. Okay. Whenever you're ready. Okay. Thank you. May it please the Court. My name is David Brandon, and I represent the third-party plaintiff in this case, an appellate at the Lambus Corporation. For over 20 years, my client had the rights to manufacture and license Mossimo clothing throughout Asia. Mr. Harry Herr Lambus, who is the principal of the Lambus Corporation, and the third-party defendant, Victor Siasat, also had a longstanding relationship of over 20 years and were essentially best friends until this dispute. Yet, when my client's relationship with Mossimo turned rocky, the third-party defendant, Victor to essentially cut my client out of the deal, and such that Mossimo is now doing business with Victor Siasat and Promark Entities, which is essentially a company he owns and controls. Is your client's claim dependent on the existence of a contract? It is. So what do you point to as the contract? Well, we point to, one, the existing written contract that was in place, and also the $100,000 agreement. My understanding is there's one dated in 1996 and one in 2012 or something like that. Is that right? That's right. But also, my client made a $100,000 payment to Mossimo and basically inked a deal at that time, which Mossimo essentially renamed. Let's talk about the 1996 agreement. Okay. That's one of your bases for asserting that a contract did exist? Yes, Your Honor. Could you point to me where in your complaint you discussed the 1996 agreement? Well, I don't have the complaint in front of me, but I... Well, I've read it, and it's not there. Okay. But the other problem is on page 10. Actually, it's excerpt 10. The district court found, he started his analysis there about this 1996 agreement, an alleged agreement, and it says, no other party or third party has ever acknowledged the existence or validity of this alleged agreement, nor has TLC provided any other evidence substantiating its existence. So even if the complaint had been amended to refer to this 1996 agreement, the court went on to explain why no reasonable juror could rely upon it. Do you want to pick it up right there? I will. First of all, it's their motion for summary judgment. It's their burden to prove, and the evidence that they used to prove that there was not a contract was the complaint by Mossimo, and you can't bootstrap mere allegations in a complaint to destroy my client's claim, and that's what the court did. But what he's saying is that I read it, and correct me if I'm wrong, but I read the judge's reasoning here to say it's unreasonable, not only because this agreement wasn't in your complaint, this 1996 agreement, but that it's allegedly an agreement that allows the license in perpetuity, and had that been the case, there wouldn't have been any reason for the subsequent agreement. So what is your response to that? Well, my understanding of the different agreements were, is that as economic factors changed and circumstances changed, that they renewed and entered into new agreements between the Mossimo Corporation and Lambus Corporation and its sole supply, its first kind of entity that Mr. Hare Lambus. Counsel, why would that, the district court's reasoning is that it was not a plausible allegation because if they had an oral agreement, or for that matter, a written agreement from 1996 that was supposed to be in perpetuity, why would there have been any reason to enter into substance of agreements? And that's what I'm trying to get at. Well, I think that the answer is, is because at some point, and it's in my client's declaration, Mossimo comes to them and wants to renegotiate the deal, wants to take back part of Asia, take back some of the countries that were granted to my client, and is also demanding payments. So that's why they entered into other agreements. But if you just look at the $100,000 payment, which my client signed a declaration to, also attaching the wire transfer receipt, you'll see that my client is in negotiations with Mossimo while Victor Seat and Promark are in negotiations and end up signing a deal with them. Right. And you can't do that. And in negotiations being the operative part of that sentence, right? It seems to me that your complaint alleges that there were these ongoing negotiations and then a draft contract showed up and it didn't reflect at all the parties' agreement, and that sounds to me like a contract that didn't happen, didn't ever really form. So what is your response, please? Well, in our brief, we talk about the existence of an oral agreement being fully enforceable and that if all that is left to do is to put the oral agreement between the parties left, nothing to be done other than sign the writing and to pay over the initial payment, the Code Sections 5050 and 5065 of the Civil Code constitute a valid and binding contract. So is it your response that an oral agreement with all essential terms was reached and that all that had to happen was that the agreement had to be memorialized? Yes. And that by accepting the payment, that there is a prospective economic benefit. The two are engaged in negotiations, and when parties are engaged in negotiations, you can't swoop in being privy to insider information and cut him out of the deal, and that's what happened here. When they come to the microphone, they're going to say what they said in their brief, which is that that $100,000 payment was payment because there was an outstanding obligation for prior infringement. Do you want to speak to that? Well, we dispute that, and that's another disputed fact that needs to go to a jury and not be decided by the court. And that's the whole point of summary judgment is if you have disputed facts, they go to the jury. The jury has to weigh those. It has to be a material disputed fact. Correct. We agree with that. And so that's our main pitch is that the evidence that they used, they didn't prove their case. The evidence they used is a complaint with mere allegations that weren't proven. My client ends up settling with Mossimo, has a confidentiality agreement in place, and that they didn't prove their case for summary judgment. The burden wasn't on us. The burden was on them. And the court even says that it's not supposed to judicially notice the truth of disputed facts contained in such a document, meaning the complaint goes on to do so. Can I ask you a question about the 1996 agreement, please? I can't see, I think per Judge Hawkins' questions, I can't see it anywhere. Until the declaration filed in opposition to the summary judgment motion, I think that's the first time it makes an appearance. I think that's what the district court thought as well. Okay. So my question is really whether you think it's appropriate at that point that the district court had in front of it something that really should have defeated summary judgment on that first alleged contract. We would agree with that. Sorry, agree with what? That the court should have considered that as another indication of the relationship and the contractual obligations between my client and Mossimo. Well, so going back, my understanding of your answer to Judge Hawkins' first question was, yep, my claims depend upon the existence of a valid contract. So I'm trying to figure out whether or not you think by raising it in opposition to their summary judgment motion that your client did enough to defeat the existence of that first contract. We do believe so. Why? And we also believe that, moreover, that the evidence of the oral contract is crystal clear. You've got a $100,000 payment. So even if we were to lose that, we still get to go forward with the claim for torture, interference, or prospective economic relationship, and we weren't able to do so. I'll reserve the rest of my time. Thank you, Your Honor. Thank you. Good morning. Larry Gabriel on behalf of the appellee. May it please the court. The court's questions to counsel are right on. There was no contract. There was no plausibility of a contract. And to even conceive that there was a contract at the time that the Alleged Act happened, there's no basis in fact in the record to support that. On the motion for summary judgment, once the moving party has presented its case and presented evidence, then obviously the burden is on the opposing party to present specific facts showing that there is a genuine issue for trial. They haven't done that. Their entire contention is that there was this agreement in 1998 that nobody can find any documents for that just sort of appeared. That was obviously, if it existed at all, was obviously replaced by the subsequent written agreements that were entered into between the parties. And that the $100,000 payment somehow cemented this alleged oral agreement. But the facts are to the contrary. The facts are that we don't make findings of fact at summary judgment. So what are the undisputed facts? That's his stronger argument, right? Because there's no contest that the $100,000 payment was made. Right. And his theory is that there was a binding oral agreement, and then it was only when the opposing party went to memorialize it that it got wobbly. So why does he not have an enforceable oral contract? Because, Your Honor, when the writing went back, and it was different terms, and there was never a meeting of the minds. Well, he says there was. That's the whole point. He says there was a meeting of the minds on the oral contract, and that in bad faith, that's the implied. In bad faith that it came back memorialized differently than what the parties had already agreed to. So what is your defense to the formation of that oral contract, please? It is that there could not have been an oral contract, number one. And I believe, and the timing is important here, I think at the time that they were talking about that, that the lawsuit had already been filed. And so if you have this lawsuit filed that alleged fraud between the parties, ongoing fraud for over 20 years, that for them to now come back and say, oh, we have an oral agreement based on some negotiations that were going on, isn't, as I said, isn't supported, particularly if you have a writing that is memorializing it and says, here is what we think the contract is. And they say, no, that's never it. There's never a meeting of the mind. There can't be an oral contract, and there can't be a written contract. You have to have some meeting of the minds. Obviously, there wasn't. Again, counsel, he says there was. And the only thing we have to decide is whether there's a material issue of fact. And the strongest argument he's got is that they did come to agreement on the oral term. So you've explained that you think that alleged oral contract was entered into after this lawsuit was filed. Is that right? I have to check on the timing of that. I think that's when it was negotiated. I can't. But let me answer your question because I think it's important. In the history of this is where in the 2000s where they had all these written agreements, you now have what purports to be some negotiations going on. And I get back to that if the parties are memorializing this oral agreement in writing and they can't reach terms of it in the writing, then there can't be an oral agreement because there was no meeting of the minds. There couldn't possibly have been. And that's the only undisputed evidence that there is for counsel to say, oh, we had an oral agreement, and to have his client send him a declaration on that point doesn't weigh against the fact that there was an admission that there was a writing and that the writing didn't reflect the terms of what they may have thought the deal was and that there was clearly an intent on the parties to memorialize this in writing. There's no meeting of the minds. There is simply no contracted law. Does Mr. Harambolous, am I pronouncing it correctly? I'd call him by his first name. Harry. Harry. Okay. Well, then we're on the same wavelength. Right. There's a declaration of his in this case, correct? Yes. Does he speak to the 96 agreement or the 2012 alleged oral agreement? I do not think he speaks to the 96 agreement. Okay. So he's talking about the 2012. Right. Is there sufficient information in that declaration to establish a contract? I don't believe so, Your Honor. And again, I get back to the point of what is the sense of having a written agreement? Is he the party to be charged? Well, now there's an interesting question, because the party that's suing here is Lambus Corporation. Now, you'll note that Lambus Corporation isn't a party to any of the previous contracts. What's Lambus doing here? Lambus has no interest in this. None of the previous contracts, even the alleged 1998. Let me try it this way. Okay. If Harry signed a declaration or affidavit talking about the party's discussions in 2012, and in it, there's sufficient information as to the terms, who the party to be charged was, et cetera, could that take it out of the statute of frauds? And I hate to keep repeating myself. I don't think the answer to that is no. Okay. Go ahead. Because if there's an oral agreement, I get back to the writing. You can't have an oral understanding that then says, oh, and we're going to have a written contract, and never have a signed agreement, and an admission that the terms were never agreed to. We don't know what the terms of the oral agreement is. They didn't specify them all. They just said we had an oral agreement. Harry doesn't talk about that at all in his declaration. No. Okay. But again, I get back to the other point of, what is Lambus even doing here? Because it was never a party to any of the previous agreements. Any other questions? No. Thank you. Your Honors, in his declaration, Mr. Harold Lambus talks about his relationship with the companies in paragraph 3, that he's a director of the Lambus Corporation. Lambus is a assignee of the other contracts. In addition, he outlines the whole history of the dealings with Mossimo, and his original investment of 1.4 through his company's payment to Mossimo's. Also in paragraph 24, he outlines the payment of the $100,000. They come back again to the fact that there's a dispute, there's a lawsuit filed, and the court cannot take that as gospel, as an established fact. Let's assume that there's sufficient information in Harry's declaration to establish that there was a contract. Just assume that. In that agreement, who was the party to be charged? It's the Lambus Corporation. He's negotiating on behalf of the Lambus Corporation. All right. That's all I have. It says, well, I just can't stand it. It said, during 95 and 96, a relationship developed between myself and Mossimo, founder of the Mossimo brand, and then the last sentence says, for approximately $1.4 million cash injection into its coffers, Mossimo relinquished rights in 11 countries in Southeast Asia for apparel and apparel accessories and worldwide for footwear. In favor of whom? Where does it say Lambus? That's correct. And he also, above that, talks about, at the time the Mossimo company was planning an IPO on the New York Stock Exchange, and in order to improve its liquidity and other strategic reasons, the company entered into a series of agreements with Soul Supply Inc. and its affiliated companies. The Lambus Corporation is an affiliated company of Soul Supply. Is that in? It is pretty hard to connect the dots.  Yes, Your Honor. Where is that, please? Okay. I'm going to look for it. Oops. They talk about Soul Supply in paragraph 10, lines 26 through 28. I'm trying to find the... They also talk about, Mr. Herlambus talks about it in paragraph 11. The underlying rights with respect to four countries were held by Soul Supply Inc. Okay, so I've read those provisions, and I've read the whole declaration, so I don't want you to take all your time on this. If there's anything else you want to point out, I want to consider it. No, Your Honors. Thank you. That's the conclusion of your argument. Any further questions? I have none. Okay.     Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. That concludes our argument today. We'll stand in recess. All rise.
judges: Hawkins, Christen, Hoyt